UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
IN RE PETITION OF ARTURO PEDRO PABLO      :      18mc207 (DLC)
ESCALLÓN LLOREDA TO TAKE DISCOVERY        :
PURSUANT TO 28 U.S.C. § 1782              :      OPINION AND ORDER
                                         :
---------------------------------------- X

APPEARANCES:

For Petitioner:
Carlos A. Acevedo
Krupnick, Campbell, Malone, Roselli,
Buser, Slama, Hancock, McNelis, Liberman, & McKee, P.A.
700 Southeast Third Avenue
Courthouse Law Plaza
Fort Lauderdale, Florida 33316

Gregory J. Getz
Leitner & Getz LLP
35 East 35th Street, Suite 1A
New York, New York 10016

John J. Halloran, Jr.
John J. Halloran, Jr., P.C.
50 Main Street, Suite 1000
White Plains, New York 10606

For Respondents:
James D. Arden
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019

DENISE COTE, District Judge:

    On May 16, 2018, petitioner Arturo Escallón ("Petitioner") applied to take discovery pursuant to 28 U.S.C. § 1782 in connection with ongoing and contemplated proceedings in Colombia. For the reasons stated on the record at a conference

of August 24 and herein, the petition is denied.

## BACKGROUND

The following facts are drawn from the declarations and exhibits submitted by the parties in support of and opposition to the motion. This proceeding arises from a contentious and protracted intra-family dispute among Colombian domiciliaries, which has spanned twelve years and spawned some fifteen civil and criminal legal proceedings in Colombia. Principally at issue are the estate assets of Dr. Gustavo Escallón ("Dr. Escallón"), a wealthy citizen of Colombia who died in 2006. Petitioner Arturo Escallón is one of four children of Dr. Escallón and his wife, Lucrecia. Respondents Patricia Ardila and Carlos Ardila ("the Ardilas") are Petitioner's sister and brother-in-law. Petitioner brings this application to take discovery pursuant to 28 U.S.C. § 1782 of the Ardilas and Lucia Galarza, an employee of Mr. Ardila in New York.

The petition seeks deposition testimony and document discovery related to two accounts with Merrill Lynch in New York ("the Merrill Lynch Accounts"), and an account with J.P. Morgan in Switzerland ("the J.P. Morgan Account"), that Dr. Escallón opened before his death. It also seeks information and documentation about the corporate structure and ownership of Clear Pond Investment Corporation ("Clear Pond"), a Panamanian

corporation formed by Dr. Escallón as an estate planning vehicle.

Petitioner lists four ongoing or contemplated proceedings, all in Colombian courts in Bogotá, in which he proposes to use the requested discovery: 1) an ongoing probate proceeding regarding certain assets of the late Dr. Escallón; 2) a claim for an accounting against Patricia Ardila -- a respondent in the instant proceeding -- with regard to the J.P. Morgan Account, which was dismissed but which Petitioner explains he intends to re-file; 3) a criminal complaint against Petitioner related to his alleged mishandling of the corporate assets of El Zarzal, a family corporation formed under the laws of Colombia; and 4) a criminal complaint for perjury against the Ardilas which Petitioner states he intends to initiate (collectively, "the Colombian Proceedings").

The instant petition was filed in this Court on May 16, 2018. A conference was scheduled and Petitioner was ordered to serve his application and the scheduling order on respondents. Upon request from respondents' counsel, a briefing schedule was set and the conference was adjourned to August 24. The motion became fully submitted on August 17. Oral argument was held on August 24.

**DISCUSSION**

Petitioner seeks discovery of the Ardilas and Lucia Galarza in aid of the Colombian Proceedings. The Ardilas object that they are not "found in" nor do they "reside in" the Southern District of New York, and that the requested discovery is not "for use in" the Colombian Proceedings, as required by § 1782. They also ask that the Court exercise its discretion to deny the application under Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Because the Ardilas are not "found in" and do not "reside in" the Southern District, and because the requested discovery is not "for use in" the Colombian Proceedings, the application must be denied on statutory grounds. Even if these statutory requirements were met, however, the application would be denied in an exercise of discretion based on a weighing of the Intel factors.

**I. Section 1782 Statutory Requirements and Discretionary Factors**

28 U.S.C. § 1782 provides, in pertinent part: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document . . . for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." The Second Circuit has

> summarized the statute as setting forth three requirements: that "(1) the person from whom

4

> discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person."

Certain Funds, Accounts, and And/Or Inv. Vehicles v. KPMG LLP, 798 F.3d 113, 117 (2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012)). The party seeking the discovery bears the burden of establishing that the statutory requirements are met. See id. at 118.

> Once the statutory requirements are met, the district court may order discovery under § 1782 in its discretion, taking into consideration the "twin aims" of the statute, namely, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."

Id. at 117 (quoting In re Metallgesellschaft, 121 F.3d 77, 79 (2d Cir. 1997)).

The Supreme Court outlined in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), a number of factors that a district court should consider in deciding how to exercise this discretion. The discretionary factors are:

> First, when the person from whom discovery is sought is a participant in the foreign proceeding the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.

5

> Second, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.
>
> Third, a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.
>
> Finally, unduly intrusive or burdensome requests may be rejected or trimmed.

Brandi-Dohrn, 673 F.3d at 80-81.

**II. Respondents Patricia and Carlos Ardila are not "found in" and do not "reside in" the Southern District of New York.**

The Petitioner has failed to carry his burden to show that the Ardilas were residents of the Southern District of New York as of the time he attempted to serve them. Section 1782 requires that "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." Id. at 80. The Second Circuit's leading case on the "is found" prong of 28 U.S.C. § 1782 is In re Edelman, 295 F.3d 171 (2d Cir. 2002). Edelman involved the question of whether an individual who lived and worked abroad could be subject to a deposition in the United States pursuant to § 1782. Id. at 173. After engaging in extensive analysis of the text and history of the statute, the court held that "the phrase 'or is found' in § 1782 [has] the same breadth as that

6

accorded it in Burnham v. Superior Court of California, 495 U.S. 604 (1990)." In re Edelman, 295 F.3d at 179. To be "found" in a place under Burnham, and thus under § 1782, requires a person to be physically present in the jurisdiction when served with process. See Burnham, 495 U.S. at 619 (plurality opinion).

Petitioner has not alleged that either Carlos or Patricia Ardila were served with process while physically present in the Southern District of New York. Although the affidavits of service submitted by petitioner indicate that copies of the service papers were left with the doorman at a building where the Ardilas have an apartment, this is not the kind of personal service required by § 1782. See In re RSM Production Corporation, No. 17-mc-213 (DLC), 2018 WL 1229705 at *3 (S.D.N.Y. Mar. 9, 2018).

Petitioner contends that the Ardilas "reside in" the Southern District of New York because they maintain an apartment at 28 East 70th Street, New York, New York. The statute does not define the term "resides," and the Second Circuit has not yet construed the term in the context of § 1782.

"[I]t is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." Dekalb Cty. Pension Fund v. Transocean Ltd., 817 F.3d 393, 405 (2d Cir. 2016) (citing United States v. Castleman, 572 U.S. 157, 162

7

(2014)). We thus look to how the term "resides" has been generally understood at common law. As an initial matter, the "resides in" prong of the § 1782 analysis does not require that the respondent be "domiciled" in the district. In another context, the Second Circuit has noted that "[t]he terms resident and domicile, though sometimes synonymous, have different common law meanings." Rosario v. I.N.S., 962 F.2d 220, 224 (2d Cir. 1992). "Residency means an established abode, for personal or business reasons, permanent for a time. A resident is so determined from the physical fact of that person's living in a particular place." Id. "Residence is the act or fact of living in a given place for some time, while domicile is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004) (citing Black's Law Dictionary 501, 1310 (7th ed. 1999)). While "resides in," as used in § 1787, does not require that an individual be present in their home at the time of service, it does require that the home be the person's established abode at the time of service, with some degree of permanent occupancy.[1]

---

[1] Petitioner cites cases including Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253 (2d Cir. 1991), for the proposition that an individual who has multiple residences may be served at one of them. In that case, which construed the term "dwelling

8

At oral argument, counsel for Petitioner agreed that the test for "residency" requires some "indicia of permanency." Petitioner offers a number of facts that he contends provide sufficient indicia of permanency. These include entries in an online residential directory listing respondents' address as 28 East 70th Street and Federal Election Commission records showing that one "Felipe Ardila" gave 28 East 70th Street as his mailing address in 2007.² Counsel for Petitioner also represents that the Ardilas employ full-time live-in staff to maintain the apartment, that they receive mail there, and that they invite guests and family members, including Petitioner to use the apartment. Carlos Ardila has testified to using the apartment when he is visiting New York for business or otherwise. Petitioner also submits the affidavit of a process server who attests that he spoke with a doorman at 28 East 70th Street, as evidence that the Ardilas "reside" at that address. According to the process server's affidavit, the doorman told him that the Ardilas had left earlier in the day "to their home in Colombia," that "they maintain the apartment in the building but spend most

---

house or usual place of abode," contained in what is now Fed. R. Civ. P. 4(e)(2), the respondent was actually living in the apartment at the time that papers were served there. Id. at 258. It is, however, true that a person may have more than one residence. Rosario, 967 F.2d at 224.

² Felipe Ardila, apparently a relative of Carlos Ardila, is not named as a respondent in this request for discovery.

9

of the year out of town," and that "they did not leave a date that they would be returning."

None of these facts, taken singly or together, shows that the Ardilas reside at the apartment at East 70th Street. In particular, the process server's affidavit does not support Petitioner's argument that the Ardilas were residing at 28 East 70th Street when the papers were served. If anything, it confirms that the Ardilas reside in Colombia and have no permanent presence in New York.

Petitioner has failed to raise any inference that the apartment reflects a permanent, established abode in New York. As counsel for Petitioner conceded at oral argument, "indicia of permanence" refers to permanency of presence, not the existence of a permanent connection to a particular piece of real estate. Petitioner's factual submissions, at best, establish that the Ardilas have for some time maintained an apartment in New York, and that they stay in that apartment when they come to New York, for business or otherwise. Mere ownership and control of, and occasional presence in, an apartment does not, by itself, raise an inference that the apartment is the Ardilas' established abode or residence. While an individual may have more than one residence, the evidence before the Court establishes that the Ardilas reside in Bogotá, not in New York. The application for discovery must therefore be denied as to the Ardilas on

10

statutory grounds because they were not found in, and do not reside in, the Southern District of New York.

It is uncontested that respondent Lucia Galarza was "found in" the Southern District of New York because she was personally served here.  For the reasons set forth below, however, Petitioner's application to take discovery of Ms. Galarza is also denied on statutory grounds and as a matter of discretion.

**III. The discovery is not "for use in" a foreign proceeding.**

Petitioner's application is also denied because the requested discovery is not "for use in" foreign proceedings.[3] "The key question . . . is not simply whether the information sought is relevant, but whether [Petitioner] will actually be able to use the information in the proceeding." Certain Funds, Accounts and/or Investment Vehicles, 798 F.3d at 120.  "The relevance of the information sought may be necessary, however, insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." Id. at 120 n.7.

Although the petition describes four pending or contemplated proceedings in Colombia, in his reply brief and at oral argument Petitioner principally argued that the requested

---

[3] It is undisputed that the final statutory requirement, that the petitioner be an "interested person" in the foreign proceeding, is met.

11

discovery would be used in defending the criminal charges pending against him.[4]  Petitioner has not adequately explained, however, how any of the information that he requests is relevant to these charges or will aid him in defending against them.

Petitioner is facing a criminal complaint in Colombia brought by El Zarzal, S.A. ("El Zarzal"), a Colombian corporation which he managed until 2015.  It is undisputed that 95% of the shares of El Zarzal are held by Clear Pond, a Panamanian entity set up by Dr. Escallón prior to his death.  The remaining five percent of the shares are split more or less evenly between Petitioner and two of his siblings -- Patricia Ardila (a respondent in this proceeding) and Alejandro Escallón.  The purpose of both El Zarzal and Clear Pond is to manage the assets of the Escallón family.

The criminal complaint alleges that Petitioner committed an "abuse of trust" when he unilaterally transferred assets from El Zarzal into a trust vehicle over which he had sole control, and subsequently failed to comply with an order issued by a

---

[4] Petitioner has essentially abandoned his arguments with respect to the other three proceedings with good reason.  The Ardilas are participants in each of the other three actions, which dooms Petitioner's request for discovery to be used in those actions under the first Intel discretionary factor, as described below. It is undisputed that Colombian courts have the power to order parties to proceedings to give testimony and produce documents.

Colombian court commanding him to restore the assets.[5] Petitioner's defense is that he removed the assets from El Zarzal in order to protect the family's assets from unknown individuals who he believed had acquired a stake in Clear Pond. According to Petitioner, in 2015 he became aware that the corporate structure of Clear Pond had been altered and shares had been issued without his consent. Because he was unable to confirm the identities of the Clear Pond shareholders, he unilaterally removed the assets from El Zarzal (of which Clear Pond is the majority shareholder) and placed them in a trust under his control in order to protect the family's assets. Petitioner was subsequently removed as manager of El Zarzal, and was ordered by a civil court in Colombia to restore the assets. He has not complied with that order, and El Zarzal has now filed a criminal complaint against him for "abuse of trust."

At oral argument, counsel for Petitioner stated that the documents related to Clear Pond would help to establish that he did not have the requisite mens rea for the crime and that there was no injury, which is an element of the crime. It is unclear how documents of which Petitioner had no knowledge could possibly bear on his mental state. Petitioner's failure to

---

[5] Petitioner failed to disclose, in his original ex parte application, the existence of this court order and his failure to comply therewith. These facts were first disclosed in the respondents' submissions in opposition to the motion.

acknowledge that a Colombian civil court has already found his actions to be improper and ordered him to restore the transferred assets to El Zarzal also casts doubt on the relevance of the requested discovery. He has not suggested what information might be contained in those documents that would justify his failure to comply with a court order. Petitioner has also completely failed to demonstrate that the information he seeks regarding the two Merrill Lynch accounts and the JP Morgan account has any bearing at all upon a possible defense to this criminal complaint concerning the assets of El Zarzal.

In short, Petitioner's discovery request appears to be little more than a fishing expedition to acquire documents and information that have at best limited relevance to the Colombian Proceedings. Petitioner has therefore failed to show that the requested discovery is "for use" in foreign proceedings as required by § 1782, and his application must be denied on statutory grounds.

**IV. The application would denied as a discretionary matter.**

Even if Petitioner were able to meet the statutory threshold criteria, his application would be denied as a matter of the Court's discretion. It is assumed that Colombian courts are receptive to judicial assistance from United States federal courts. The remaining <u>Intel</u> discretionary factors, however, taken singly and together weigh heavily against granting

14

Petitioner's application to take discovery under § 1782.

With respect to the first Intel factor, it is uncontroverted that the Ardilas are under the jurisdiction of Colombian courts in Bogotá, and have been active participants in the proceedings there. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Brandi-Dohrn, 673 F.3d at 80 (citation omitted). Any necessary fact finding could be done by the Colombian courts in accordance with Colombian procedure. To the extent that any documents or testimony related to the Merrill Lynch Accounts, the JP Morgan Account, or Clear Pond are at all relevant to any of the Colombian Proceedings, Petitioner's recourse is to the courts of Colombia and Panama, not the Southern District of New York. Indeed, Petitioner has already examined the Ardilas on these subjects pursuant to Colombian procedures.

Second, the request appears to be an attempt to circumvent the proof-gathering procedures of the Colombian tribunal. Apparently unsatisfied with the testimony the Ardilas have already given in Colombian court proceedings, Petitioner asks this Court to order their depositions so he might have a second bite at the apple. It is uncontested that Colombian law does not permit a second examination on the same topic. The request to depose the Ardilas in the Southern District of New York is an

15

apparent attempt to circumvent this restriction.  Moreover, Respondents have submitted uncontroverted testimony from a Colombian lawyer about the proof-gathering procedures that are available to Petitioner within the pending and contemplated proceedings, including procedures to obtain documents that are located abroad.  Petitioner does not contest the availability of these procedures, but instead submits a declaration from his Colombian attorneys attesting that Colombian judges "tend to find, in practice, difficulties obtaining them," due in part to the "reluctance" of parties to cooperate.  Anticipated reluctance of parties to produce documents, however, is not an excuse to circumvent Colombian procedures altogether by seeking discovery in New York.

Finally, Petitioner's discovery request is unduly intrusive and burdensome.  Petitioner has made no showing that Lucia Galarza has custody, control, or possession of the documents he seeks.  There is an uncontroverted declaration from Ms. Galarza in the record, testifying that she does not have knowledge, possession, custody, or control of any documents related to the JP Morgan and Merrill Lynch accounts, Clear Pond, or indeed any personal financial or business records related to the estate of Dr. Escallón.  As discussed above, the Ardilas are residents of Bogotá and spend the majority of their time in Bogotá.  To compel residents of Bogotá, who are under the jurisdiction of

16

Colombian courts, to travel to New York to give testimony to be used in a Colombian judicial proceeding, would be unduly burdensome. The application appears to be vexatious. See In Re Application of RSM Corp., 2018 WL 1229705, at*4.

## CONCLUSION

Petitioner's May 16, 2018 application to take discovery of respondents Patricia Ardila, Carlos Ardila, and Lucia Galarza pursuant to 18 U.S.C. § 1782 is denied. The Clerk of Court shall close this case.

Dated:   New York, New York
         September 4, 2018

_____
DENISE COTE
United States District Judge